UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| **MICHAEL N. SMETZER,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CAUSE NO. 1:10-CV-93-JVB |
| | ) |
| **LARRY R. NEWTON, individually** | ) |
| **and in his official capacity as Sheriff of** | ) |
| **Jay County; NATHAN K. KEEVER,** | ) |
| **individually and in his official capacity** | ) |
| **as Jail Commander of the Jay County** | ) |
| **Security Center (a/k/a Jay County Jail);** | ) |
| **JANE DOE and JOHN DOE,** | ) |
| **UNKNOWN SHERIFF DEPUTIES,** | ) |
| **individually and in their official** | ) |
| **capacities as members of the Jay County** | ) |
| **Sheriff's Department, collectively,** | ) |
| | ) |
| **Defendants.** | ) |

## OPINION AND ORDER

### I. PROCEDURAL BACKGROUND

In his lawsuit, Michael Smetzer contends that while a prisoner in the Jay County Jail, the Defendants deliberately, or perhaps negligently, ignored his dental condition as it grew progressively and seriously worse. He sues them all under 42 U.S.C. § 1983 and also advances various Indiana state law claims.

What is before the Court now, however, is the Defendants' fully briefed Motion to Dismiss. (Docket # 19.) Much of the motion centers on timeliness. In short, Defendants argue that because of the applicable two-year statute of limitations, some of Smetzer's § 1983 claims are time-barred, and that because he failed to timely or properly serve a tort claim notice under

the Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3, *et. seq*., all of his state law claims are barred and must also be dismissed. Beyond this alleged tardiness, the Defendants argue that as a matter of law Smetzer has no claim for punitive damages except for his individual capacity claims under § 1983.

As an alternative argument, the Defendants maintain that the state law tort claims against the individual Defendants must be dismissed because they were always acting "within the scope of [their] employment" under Indiana Code § 34-13-3-5(b). Accordingly, the Defendants maintain that the only proper state tort defendant would be the governmental entity, the Sheriff of Jay County, Indiana. In addition, Defendants move to dismiss with prejudice all claims against any unknown sheriff's deputies, the Doe Defendants, because it is too late (with the running of the statute of limitations) to haul them into court now.

Smetzer disputes nearly all of these arguments. First, he contends that his complaint is timely because the alleged acts and omissions were all part of one continuous violation. He also argues that, in any event, Indiana's governing statute of limitations was tolled because for part of the time he was in a coma and under a legal disability. (Pl.'s Mem. in Opp'n of Defs.' Mot. to Dismiss 2-5.). Smetzer further asserts that his state law claims are not barred against the individual Defendants under the ITCA because no tort claim notice is required where, such as here, the government employee is sued for acting maliciously, willfully, and wantonly, and thus outside the scope of his employment. (*Id*. at 7.)

In addition, although Smetzer concedes he is not entitled to punitive damages against a governmental entity, he does maintain that such an award would be proper under § 1983 against the Defendants in their individual capacities. (*Id*. at 8.) Finally, Smetzer maintains that his

claims against the Doe Defendants survive because under Federal Rule of Civil Procedure 15(c) they relate back to the date the complaint was filed. (*Id.*)

As the following discussion reveals, the Motion to Dismiss must be DENIED in part and GRANTED in part.[1]

## II. FACTUAL BACKGROUND

In order to assess the Motion to dismiss, the Court accepts as true the following facts extracted from Smetzer's complaint.

Smetzer was incarcerated in the Jay County Jail from October 11, 2007, through April 1, 2008. (Compl. ¶ 11.) On March 21, 2008, his mouth began to ache, causing severe pain. (Compl. ¶ 12.) He informed the Defendants of his pain and discomfort on several occasions that week. (Compl. ¶ 13.)

On the evening of March 27, 2008, Smetzer was taken to see a dentist, Dr. Mark Tatman, who removed one of his teeth. (Compl. ¶ 14.) His pain persisted when he returned to the jail later that evening, however, and his mouth and throat began to swell. (Compl. ¶ 15.) The next day, Smetzer requested additional medical treatment to address the increasingly intense pain, swelling, and resulting difficulty eating. (Compl. ¶¶ 16, 17.)

On March 29, 2008, after Smetzer made additional requests for medical treatment, the Defendants contacted Dr. Tatman, and he prescribed pain medication and antibiotics. (Compl. ¶ 18.) Smetzer claims, however, that the Defendants never provided him with the prescriptions and continued to ignore his complaints of pain over the next few days. (Compl. ¶¶ 19, 20.)

---

[1] All parties have consented to the jurisdiction of the undersigned Magistrate Judge in accordance with 28 U.S.C. § 636(c).

On March 29th or 30th, Smetzer's ex-wife visited him, and after seeing that he was in severe pain and that his face was red and swollen, notified the Defendants of his condition. (Compl. ¶ 21.) On March 30th, he developed difficulty breathing. (Compl. ¶ 22.) When Smetzer awoke early in the morning of April 1, 2008, he was unable to breathe or speak. He shook his sleeping cellmate, who summoned the Defendants. (Compl. ¶ 23.) An unknown sheriff's deputy called the Jay County Emergency Medical Services for an ambulance. (Compl. ¶ 24.)

The paramedics arrived and took Smetzer's vital signs. (Compl. ¶ 25.) An unknown sheriff's deputy, believed to be Deputy Sheriff Roger Boyd, refused to send Smetzer to the Jay County Hospital for immediate care. (Compl. ¶ 25.) Sheriff Newton told Smetzer that he was not going to the hospital because he was costing the Sheriff's office too much money and that besides, he soon would be transferred from the Jay County Jail and would not receive any further medical attention until then. (Compl. ¶ 27.)

Smetzer's condition, however, continued to deteriorate, and later in the evening of April 1, 2008, the Defendants transported him to the Jay County Hospital for further medical treatment. (Compl. ¶ 28.) There, Smetzer was diagnosed with a potentially life-threatening infection known as Ludwig's Angina. (Compl. ¶ 29.) The next day, April 2, 2008, Jay County Hospital arranged for Smetzer's transfer to Wishard Hospital. (Compl. ¶ 30.) He was placed in an induced coma for several days in the Intensive Care Unit, and a tracheotomy and feeding tube were surgically inserted. (Compl. ¶ 30.)

Almost four weeks later, on April 29, 2008, Smetzer was discharged from Wishard Hospital and sent to Plainfield Correctional Facility, where he received continued medical

treatment. (Compl. ¶ 32.) More than seven months later, around December 16, 2008, Smetzer claims he submitted to the Defendants his tort claim notice. (Compl. ¶ 35.)

### III. LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14).

In addressing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). However, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Twombly*, 550 U.S. at 556).

A complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief. If the allegations, for example, show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face." (internal quotation marks omitted)); *see also Jones v Bock*, 549 U.S. 199, 214-15 (2007); *Lopez-Gonzalez v. Comerio*, 404 F.3d 548, 551 (1st Cir. 2005) (dismissing a complaint barred by the statute of limitations under Federal Rule of Civil Procedure 12(b)(6)); 5B C. WRIGHT & A. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357, at 708-710, 721-729 (3d ed. 2004).

"While complaints typically do not address affirmative defenses, the statute of limitations may be raised in a motion to dismiss 'if the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Brooks*, 578 F.3d at 579 (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (finding it appropriate to consider a statute of limitations defense "because the relevant dates [were] set forth unambiguously in the complaint")).

## IV. DISCUSSION

*A. Smetzer's Complaint of Deliberate Indifference to a Serious Medical Need Alleges a Continuing Violation.*

As a general proposition, a plaintiff in Indiana must pursue a personal injury action within two years from the accrual of his claim. Ind. Code § 34-11-2-4(1). This same statute is essentially borrowed by the federal courts for similar claims properly brought under 42 U.S.C. § 1983. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007) (articulating that federal law looks to the applicable state's personal injury statute of limitations for application in § 1983 cases); s*ee, e.g.,*

6

*Lampley v. Mitcheff*, No. 3:08-cv-282 PS, 2009 WL 5322951, at *4 (N.D. Ind. Dec. 28, 2009) ("*Lampley II*").

In a close reading of Smetzer's March 31, 2010, complaint, the Defendants see three different deliberate indifference claims: one for the events that occurred before Dr. Tatman prescribed medications on March 29, 2008; a second arising from the alleged failure to provide those medications; and a third for what happened on April 1, 2008, the day he was ultimately transported to the hospital. (Docket # 1.) Based on this careful reading, the Defendants maintain that only the last of the three claims is not barred by Indiana's two-year statute of limitations.

Smetzer responds, however, that the facts reveal a continuing violation that eventually erupted into a full-blown medical emergency on April 1, 2008, making the complaint timely to all of the events overall. (Pl.'s Mem. 2-3.) Alternatively, Smetzer argues that the statute of limitations was tolled because under Indiana Code § 34-11-6-1, he was legally disabled while in a coma "until at least April 19, 2008." (*Id*. at 4, 5.)

The Court now turns to those arguments.

1. Smetzer Has Pled a Continuing Violation.

Essentially, the Defendants seek to preclude Smetzer from recovering for those events that occurred before Dr. Tatman prescribed medications because, from their point of view, that deliberate indifference claim was effectively choate by March 29, 2008, making the March 31, 2010, complaint untimely. The same reasoning applies to the alleged denial of medications to Smetzer on either March 29 or 30. As Smetzer sees it, however, the events were all part of a continuing violation that extended to April 1, 2008, making his March 31, 2010, filing timely.

7

*Cf. Heard v. Sheahan*, 253 F.3d 316, 319 (7th Cir. 2001) (holding that continuing violation doctrine governs accrual).

A continuing violation is a "continuous series of events [that] gives rise to a cumulative injury." *Id*. at 320; *Selan v. Kiley*, 969 F.2d 560, 564-65 (7th Cir. 1992). It occurs when "it would be unreasonable to require or even permit [the plaintiff] to sue separately over every incident of the defendant's unlawful conduct." *Heard*, 253 F.3d at 319. Once established, the theory allows a plaintiff to bring in claims otherwise time-barred provided that at least part of the continuing violation is timely. *Id*.; *Lampley II*, 2009 WL 5322951, at *4. Stated simply, "the statute of limitations does not begin to run on a continuing wrong till the wrong is over and done with . . . ." *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988, 992 (7th Cir. 2002) (quoting *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983)).

Claims of deliberate indifference to a serious medical condition begin when a prison official unreasonably disregards a prisoner's objectively serious medical condition. *Heard*, 253 F.3d at 318; *see also Hall v. Corr. Med. Servs.*, No. 1:09-cv-082, 2009 WL 2877234, at *1 (S.D. Ind. Sept. 4, 2009) (holding that deliberate indifference claims require a showing of serious medical condition and deliberate indifference). The continuing violation ends, and the claim thus accrues, upon treatment or release from custody. *Lampley v. Mitcheff*, No. 3:08-cv-282PS, 2008 WL 5171091, at *2 (N.D. Ind. Dec. 9, 2008) ("*Lampley I*"); *Jervis v. Mitcheff*, 258 F. App'x 3, 5-6 (7th Cir. 2007) (unpublished).

Smetzer's complaint implicates the continuing violation doctrine because if he is granted all reasonable inferences, *Sprint Spectrum*, 361 F.3d at 1001, he appears to allege that a rather routine dental condition gradually worsened until, at some point, it bloomed into an objectively

8

serious medical condition. More to the point, deliberate indifference claims center upon the objective severity of the prisoner's medical condition and the officials' response. *Hall*, 2009 WL 2877234, at *1. On this record, the nature and extent of Smetzer's pain, its duration, the onset of the physical manifestations of Ludwig's Angina, and whether any of this would have been warded off by the timely administering of medication are, on this record, unknown. Consequently, at this stage, the Court cannot pinpoint the moment when Smetzer's downhill slide reached the stage that the Defendants should have known that his condition was medically serious, or put in a legal context, the date when the claim accrued.

The same uncertainties also preclude the Court from determining at this point if Smetzer suffered a "cumulative injury." *Heard*, 253 F.3d at 320. In *Heard*, the Seventh Circuit Court of Appeals found it telling that "[i]t would have been impractical to allocate the plaintiff's pain day by day across the period." *Id*. The same impracticalities may or may not apply here, but it certainly cannot be said that the complaint lends itself to only one reading: the notion that Smetzer's injuries are readily divisible and that no continuing violation occurred.

Finally, the Defendants claim that Smetzer's complaint fails to make out the scienter requirements needed for a deliberate indifference individual capacity claim. In support, they cite a Third Circuit case, *Spuill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004), for the commonsense proposition that a jailer cannot be held liable for failing to respond to a prisoner's medical complaints when he knows the prisoner is already in the capable hands of a doctor. Of course, the Defendants could have easily cited to Seventh Circuit cases for the same proposition. *See Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Johnson v. Doughty*, 433 F.3d 1001, 1010 (7th Cir. 2006). In any event, the Defendants overlook that Smetzer alleges the Defendants acted

9

with deliberate indifference to his serious medical condition. (Compl. ¶ 57.) This assertion is generally considered sufficient to withstand challenge at the pleading stage. *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996); *Zarnes v. Rhodes*, 64 F.3d 285, 290 (7th Cir. 1995).

Even if we scrutinize Smetzer's complaint for the factual gloss of plausibility, *Brooks*, 578 F.3d at 581 (quoting *Twombly*, 550 U.S. at 556), the result is the same. For example, Smetzer goes beyond mere boilerplate phraseology and claims that the Defendants only took him to Dr. Tatman for medications after many requests. He elaborates that after the Defendants presumably reported to the doctor a continuing, if not worsening, condition and the doctor authorized prescriptions, the Defendants failed to procure or provide them.[2] (Compl. ¶¶ 18-19.) As a general proposition, a "serious medical need" includes any condition where the deliberately indifferent withholding of medical care results in needless pain and suffering, *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997), and prescribing a prescription pain killer is some evidence of a serious medical need. *Cooper v. Casey*, 97 F.3d 914, 917 (7th Cir.1996). Consequently, if the Defendants withheld Smetzer's medication, resulting in gratuitous pain and perhaps causing a cascade of other physical reactions that lead to a genuine medical emergency (a reasonable inference on this record), his constitutional rights may have been violated. *Johnson v. Doughty*, 433 F.3d 1001, 1017 (7th Cir. 2006).

Overall then, Smetzer's allegations are sufficient to allege a continuing violation. Of course, whether there actually was a continuing violation, as opposed to three distinct claims of

---

[2] The Defendants assume that Smetzer was actually seen twice by Dr. Tatman, once on March 27, 2008, for the tooth extraction, and again on March 29, 2008. The complaint, however, does not expressly make this assertion.

deliberate indifference, is something the Court may be called upon to address if a summary judgment motion is filed.

    2. <u>Smetzer's Claim, However, Was Not Tolled</u>.

Smetzer alternatively argues that the statute of limitations was tolled while he was in an induced coma and thus "under legal disability." (Pl.'s Mem. 5.) The Defendants respond that Indiana's tolling statute, Indiana Code § 34-11-6-1, permits tolling only if the cause of action accrued while the person was disabled. (Defs.' Reply 6.)

Federal courts employ state tolling provisions in § 1983 actions. *See Bd. of Regents of Univ. of N.Y. v. Tomanio*, 446 U.S. 478, 483-84 (1980). Accordingly, Indiana Code § 34-11-6-1 provides that: "A person who is under legal disabilities when the cause of action accrues may bring the action within two (2) years after the disability is removed." A judicially-created corollary to this principle, however, is the rule that once the statute begins to run, a subsequent disability will not "cease, arrest, or interrupt the running of the statute." *Fager v. Hundt*, 610 N.E.2d 246, 250 n.2 (Ind. 1993) (citing *Walker v. Hill*, 12 N.E. 387, 394 (1887); *Sims v. Gay*, 9 N.E. 120, 121 (1886); *Kistler v. Hereth*, 75 Ind. 177, 180 (1881)).

Accordingly, since we know that Smetzer's claim accrued no later than his removal from the jail on April 1, 2008, *Lampley I*, 2008 WL 5171091, at *2, and because he says that his coma did not start until at least a day later, when he was in the hospital, no tolling can apply as a matter of law.

### B. Smetzer's Punitive Damage Claims

The Defendants argue, and Smetzer concedes, that any punitive damages claim against a governmental entity must be dismissed under either Indiana law or 42 U.S.C. § 1983. The

11

parties further agree that Smetzer can bring a claim for punitive damages against the Defendants in their individual capacities under § 1983.

*C. The State Law Claims and the Tort Claim Notice*

The Defendants assert that Smetzer did not timely or properly serve a tort claim notice as required by the ITCA, and that therefore, all of his state law tort claims are barred by operation of Indiana Code §§ 34-13-3-8 and 13-3-10. Smetzer does not dispute that essentially no notice was provided here, but nevertheless argues he was not required to give one because he is suing the government employees in their "individual capacities" for acting maliciously, willfully, or wantonly, and in that instance, no notice is required under the ITCA. (Pl.'s Mem. 6-7.)

The Defendants rejoinder is that Smetzer cannot rely on this supposed exception to providing an ITCA notice because his complaint expressly admits that "at all relevant times," they were all essentially acting "within the scope of [their] employment" under Indiana Code § 34-13-3-5(b), and that such allegations are generally sufficient to bar a claim against a governmental employee under the ITCA. (Defs.' Reply 8-9). Indeed, the Defendants argue that it makes no difference that Smetzer does make some assertions in his complaint about jail employees acting maliciously, willfully, or wantonly (Compl. ¶ 57), because he only does so in connection with his § 1983 claim (Count 5), and that besides, even acts such as those can still be within the scope of the employee's employment. And finally, as the Defendants read Smetzer's complaint, he does not plead enough factual detail to show that the employees were clearly acting outside the scope of their employment.

Smetzer essentially concedes that he did not give timely or proper notice under the ITCA, and he does not dispute that the failure to provide such a notice will bar a claim where the

individual government employee was acting within the scope of his or her employment. *Bushong v. Williamson*, 790 N.E.2d 467, 472 (Ind. 2003) (explaining that according to the ITCA, governmental employees who act within the scope of their employment are immune from liability); *Poole v. Clase*, 476 N.E.2d 828, 828-31 (Ind. 1985). These concessions thus put the focus on what little Smetzer actually alleges in his complaint about the scope of employment or conversely, whether anyone acted outside that scope.

Turning to Smetzer's complaint, he alleges that "[a]t all relevant times" both Sheriff Newton and Jail Commander Keever were responsible for ensuring that their deputies "obey the laws." (Compl. ¶¶ 7-8.) Additionally, "[a]t all relevant times," Jail Commander Keever also was in charge of the jail's operations, enforcing department rules, and the training supervision and conduct of the unknown deputies. (Compl. ¶¶ 8-9.) Finally, "[a]t all relevant times," the unknown Deputies were employed by the Sheriff's Department or the Jay County Jail and were acting within the scope of their authority and employment as agents of the Department or Jail. (Compl. ¶ 10.) Within Count 5, Smetzer alleges "[t]hat the acts and omissions carried out by the Defendants as aforesaid was done willfully, wantonly, and maliciously, and with such reckless disregard of the consequences as to reveal a conscious disregard and deliberate indifference to Smetzer's serious medical condition." (Compl. ¶ 57.)

The issue for the Court is whether these brief snippets conclusively show that the Defendants were acting within the scope of their employment the entire time Smetzer was incarcerated in the Jay County Jail, rendering them immune personally from liability as a matter of law under the ITCA. Ind. Code § 34-13-3-5(b). Under Indiana law, an individual is acting within the scope of his or her employment if the conduct is of the same general nature as that

authorized, or incidental to the conduct authorized. *See Burton v. Lacy*, No. 1:07-cv-918, 2008 WL 187552, at *3 (S.D. Ind. 2008) (citing *Celebration Fireworks, Inc. v. Smith*, 727 N.E.2d 450, 453 (Ind. 2000) (quoting Restatement (Second) Agency § 229 (1958))). The act is within the scope of employment if the employee's "purpose was, to an appreciable extent, to further his employer's business." *Id.* at *5 (citing *Celebration Fireworks*, 727 N.E.2d at 453 (quoting *Kemezy v. Peters*, 622 N.E.2d 1296 (Ind. 1993))).

Consequently, "even the commission of intentional criminal or tortious acts or willful and wanton behavior does not necessarily remove the conduct from the scope of employment." *Id*. (citing *Bushon*g, 790 N.E.2d at 472-73; *Celebration Fireworks*, 727 N.E.2d at 453; *Kemezy*, 622 N.E.2d at 1298). Whether a person's acts are within the scope of his or her employment is usually a question of fact, although it can be determined as a matter of law in certain circumstances. *Bushong*, 790 N.E.2d at 473; *Kemezy*, 622 N.E.2d at 1298; *Konkle v. Henson*, 672 N.E.2d 450, 456-58 (Ind. App. 1996).

Although Smetzer suggests at one point in his complaint that the Defendants were acting within the scope of their employment, in another section he contends that their acts or omissions were willful and wanton as well as malicious. As Judge Tinder observed in *Burton* where he denied a motion to dismiss advanced under the ITCA, such allegations do not automatically take the Defendants' conduct outside the scope of employment, but they do "suggest . . . that the question may not be so black and white." *Burton* at *3.

Such a cautious approach is particularly warranted given that Smetzer goes beyond mere allegations and advances facts that if true (Compl. ¶¶ 13, 16, 18-19, 21, 25, 27), plausibly suggest that the Defendants either ignored or caused a medical crisis by delaying or hindering

Smetzer's dental/medical treatment due to its attendant expense. *Higgason v. State*, 789 N.E.2d 22, 30 (Ind. Ct. App. 2003) (explaining that a complaint cannot merely allege wrongdoing in order to defeat the protections afforded under the ITCA but must assert a reasonable factual basis).

After all, in the context of the ITCA, a willful and wanton omission has been defined as a "failure to act when the actor has actual knowledge of the natural and probable consequence of injury and . . . [has] opportunity to avoid the risk." *Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1113 (Ind. App. 2001) (quoting *Witham v. Norfolk & W. Ry. Co.*, 561 N.E.2d 484, 486 (Ind. 1990)). Thus, there are two elements to willful misconduct: "1) the defendant must have knowledge of an impending danger or consciousness of a course of misconduct calculated to result in probable injury; and 2) the actor's conduct must have exhibited an indifference to the consequences of his conduct." *Id*. Taking the facts pled in the light most favorable to Smetzer, he has provided a basis for showing that the Defendants disregarded a known and avoidable "impending danger" to his condition. *Miner*, 755 N.E.2d at 1113.

At this stage in the proceedings, the Court will read Smetzer's complaint as a whole and follow the "sensible" approach that Chief Judge Simon used in *Herbert v. Porter County, Indiana*, No. 2:07-CV-091 PS, 2007 WL 236835, at *4 (N.D. Ind. Aug. 14, 2007), and deem that Smetzer has pled in the alternative. *See* Fed. R. Civ. P. 8(a). As such, Smetzer has pled state law claims against the officers individually, at least to the extent that they were acting outside the scope of their employment (acting willfully, wantonly, or maliciously, for instance).[3]

---

[3] The individual Defendants argue in passing that because Smetzer alleges that they acted under "color of law," they must have been acting within the scope of their employment. As the Seventh Circuit has observed in similar contexts, this impermissibly conflates the two phrases. *See, e.g.,Graham v. Sauk Prairie Police Comm'n*, 915 F.2d 1085, 1093 (7th Cir. 1990) (acting "under color of law" for purposes of § 1983 has a broader meaning

15

Consequently, the Motion to Dismiss must be denied in relation to those claims. On the other hand, the individual Defendants cannot be liable to Smetzer to the extent they were acting within the scope of their employment because such an action is barred. Ind. Code §§ 34-13-3-8, 13-3-10.

Quite similarly, the *respondeat superior* claim against Sheriff Newton must also be dismissed. In order to maintain an action for *respondeat superior*, the employee's actions must be within the scope of employment. *Stropes v. Heritage House Childrens Center of Schelbyville, Inc.*, 547 N.E.2d 244, 247 (Ind. 1989); *see also Moore v. Hosier*, 43 F. Supp. 2d 978, 989 (N.D. Ind. 1998). Thus, since Smetzer can only establish the vicarious liability of Sheriff Newton by showing that his employees acted within the scope of their employment, and since that avenue is no longer open to him, that claim also fails.

### D. The Allegations Against the "Unknown Deputies"

The Defendants contend that the allegations against certain "unknown police officers" should be dismissed with prejudice because the statute of limitations has run, and any attempt to add them now by name would be futile because the proposed amendment would be time-barred and would not relate back to the date of the original complaint. (Def's. Mem. 9 (citing *Hall v Norfolk S. Ry. Co.*, 469 F. 3d 590, 596 (7th Cir. 2006)); *Worthington v Wilson*, 8 F.3d 1253 (7th Cir. 1993).

Although Smetzer defends the adequacy of these claims and maintains that they relate back under Federal Rule of Civil Procedure 15(c) to the date the complaint was filed (Pl.'s Mem.

---

than"scope of employment" under Wisconsin's tort immunity statutes); *Himba v. Odegaard*, 769 F.2d 1147, 1165-69 (7th Cir. 1985) (Coffey, J., dissenting) (acting "under color of law" is not equivalent to acting within "scope of employment").

16

8), he seems to leave it to the Court to actually do the legal analysis. The relation back doctrine as set out in Federal Rule of Civil Procedure 15(c)(1)(C)(I), which in turn cites Federal Rule of Civil Procedure 4(m), describes a situation where the name of a defendant can be changed within the summons time period, provided that he or she has notice of the action. Fed. R. Civ. P. 15(c)(1)(C)(i). In sum, Rule 15(c)(1)(C) has three requirements. Fed. R. Civ. P. 15(c)(1)(C)(i)-(ii). First, the requirements of Rule 15(c)(1)(B) must be met. Fed. R. Civ. P. 15(c)(1)(C). Second, the newly named defendant must have received notice of the action such that he will not be prejudiced in defending on the merits within the period provided by Rule 4(m), that is, 120 days from the filing of the original complaint. Fed. R. Civ. P. 4(m), 15(c)(1)(C)(I). Finally, the newly named defendant knew or should have known, within the Rule 4(m) period, that but for a mistake concerning the proper party's identity he would have been named in the original complaint. Fed. R. Civ. P. 15(c)(1)(C)(ii).

As the Defendants correctly point out, in this Circuit, as in some others, John Doe defendants described in a complaint do not generally count for purposes of Rule 15, because the word "mistake" does not equate with "lack of knowledge." *Worthington*, 8 F.3d. at 1256-57. This governance may have changed, however, after the Defendants' motion was filed. In *Krupski v. Costa Crociere S.P.A.*, 130 S. Ct. 2485, 294-95 (2010), the Supreme Court addressed a situation where a plaintiff knew of two parties and sued the wrong one. The Court held that a plaintiff's knowledge of the proper party's existence did not preclude the plaintiff from making a "mistake" under Rule 15(c)(1)(C)(ii). *Krupski*, 130 S. Ct. at 2493-94. The Court explained that a "deliberate but mistaken choice" to sue one party instead of another, "does not foreclose a finding that Rule 15(c)(1)(C) (ii) has been satisfied." *Id*.

17

Although *Krupski* did not deal with a case such as this one, where Doe defendants have been named, the Court's decision refocuses the question away from "whether [the plaintiff] knew or should have known the identity of [the newly named defendant] as the proper defendant," to "whether [the newly named defendant] knew or should have known [during the Rule 4(m) period] that it would have been named as a defendant but for an error." *Id.*[4]

Since the parties make no effort to discuss *Krupski*, or the new analysis it invokes, the Court will not dismiss the Doe Defendants at this point, and thus the Motion will be denied without prejudice in this respect.

## V. CONCLUSION

For the foregoing reasons, the Defendants' Motion to Dismiss (Docket # 19) is GRANTED in part in that the following claims by Smetzer are DISMISSED: (1) any claim for punitive damages against a governmental entity under either Indiana law or 42 U.S.C. § 1983; (2) all state law claims against the individual Defendants in their "official capacities"; and (3) the *respondeat superior* claim against Sheriff Newton. Defendants' Motion to Dismiss is otherwise DENIED.

SO ORDERED.

Enter for the 13th day of August, 2010.

S/Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge

---

[4] It appears that Indiana's relation back doctrine and that espoused by the Supreme Court in *Krupski* are generally in accord. *See Porter County Sheriff Dept. v. Guzorek*, 862 N.E.2d 254 (Ind. 2007).